UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

REBECCA MACE,

                        Plaintiff,

v.                                                     Case #11-CV-6574-FPG

                                                       DECISION AND ORDER

MARCUS WHITMAN CENTRAL SCHOOL
DISTRICT; THE BOARD OF EDUCATION OF
THE MARCUS WHITMAN CENTRAL SCHOOL
DISTRICT; AND MICHAEL CHIRCO,
SUPERINTENTDENT,

                        Defendants.

---

## INTRODUCTION

Plaintiff Rebecca Mace ("Plaintiff") commenced this action alleging discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law ("NYHRL"), § 290 *et seq.* ECF No. 1. In her Amended Complaint ("Am. Compl."), Plaintiff alleges that she was denied tenure by the Marcus Whitman Central School District, its Board of Education, and Superintendent Michael Chirco (collectively referred to herein as "Defendants") on the basis of her age. Am. Compl., ECF No. 5 ¶¶ 54-65.

Currently pending before the Court is the Defendants' Motion to Dismiss and/or for summary judgment. ECF No. 18. For the following reasons, Defendants' Motion is GRANTED, and this case is dismissed with prejudice.

BACKGROUND[1]

Plaintiff Rebecca Mace was born in 1963, and began her employment as a Special Education teacher at Marcus Whitman School in January 2008 when she was 44 years old.

The Marcus Whitman School District ("the District") requires that, in order to obtain tenure, teachers must be placed on a three-year probationary period. During the probationary period, teachers are evaluated by the school principals and, upon good performance, are able to obtain tenure by their fourth year of teaching. If, at the conclusion of the probationary term, the superintendent and principal are unsatisfied with a teacher's performance, no recommendation for tenure would be made and the teacher would be discharged.

Plaintiff's probationary period was set to expire in January 2011, and she was to be reviewed for tenure during the 2010-11 school year.

In the 2008-09 school year, a dispute arose between Plaintiff and a parent, resulting in the removal of that student from her class. Def. Stmt. ¶ 1.[2] Plaintiff testified that the parents of a Special Education student felt that his needs were not being met in her classroom, and that student was eventually moved into mainstream classes. She could not recall if a formal complaint had ever been made by the parent. Mace Dep. at 53-62.[3]

During that time Plaintiff also encountered difficulties with two of her teaching assistants, one of whom was re-assigned to another classroom. Def. Stmt. ¶ 2. Plaintiff stated at her deposition that she had to correct the behavior of certain support staff due to cell phone use in the workplace, however, she had never written up any documentation to that effect. Mace Dep. at 154.

---

[1] The following facts are undisputed unless otherwise noted, and are viewed in the light most favorable to Plaintiff as the non-moving party.
[2] References to "Def. Stmt." refer to ECF No. 18-1, Defendants' Rule 56 Statement of Material Facts.
[3] References to "Mace Dep." refer to ECF No. 23-4, Deposition Testimony of Rebecca Mace.

Between 2008 and 2010, Plaintiff underwent six performance evaluations by administrators and principals. The parties dispute whether Plaintiff's evaluations were historically "positive." Pl. Ex. A; Cole Aff. ¶ 8. [4]

In March of 2008, Principal Alan DeGroote initially noted that Plaintiff "work[ed] collaboratively with staff both in and out of the classroom" and "has been proactive in identifying and working to meet the needs of her students." The evaluator made suggestions for potential objectives in future lessons, and his comments were generally positive. Pl. Ex. A (3/14/2008)[5].

On May 15, 2008, Plaintiff was noted by Principal DeGroote to "use[ ] the paraprofessionals in the room appropriately," and was "willing to work collaboratively with staff." Her lesson, however, was noted to be "a little confusing," and Plaintiff was "rushing to get the information in, rather than making sure [the students] understand it." *Id.* (5/15/2008).

Plaintiff's October 29, 2008 observation, completed by Principal Cole ("Prin. Cole"), contained positive comments and some criticism. Although pleased with Plaintiff's changes in the 2008 school year, he noted that he would discuss with her "the use of TAs in the classroom, differentiating instruction, and monitoring students." Prin. Cole observed that Plaintiff's use of "SmartBoard" technology could have been extended to the students, and that it appeared that the teaching assistant had not received directions for a lesson in advance. *Id.* (10/29/2008).

In March 2009, Prin. Cole noted that the level of vocabulary used in the lesson was sometimes beyond the students' capabilities, and repeated his comments from the previous evaluation regarding Plaintiff's use of teaching assistants, differentiating instruction, and

---

[4]    References to "Pl. Ex." refer to ECF No. 23-5, Plaintiff's Exhibits, submitted in connection with her Opposition to Summary Judgment. "Cole Aff." refers to ECF No. 18-4, the Affidavit of Principal Clayton Cole in support of Defendants' Motion for Summary Judgment.
[5]    Exhibit A contains multiple pages, and individual pages are referenced by the date on the document.

monitoring students. Overall, he felt that Plaintiff had "grown as a teacher over the past year." *Id.* (3/31/2009).

During the next observation, Prin. Cole stated that Plaintiff's teaching assistant was "well prepared," Plaintiff had improved in her utilization of teaching assistants after the previous year's observations, and that she continued to grow as a teacher. *Id.* (11/19/2009).

Prin. Cole's final evaluation noted that the teaching assistant in Plaintiff's room was "well utilized," but noted Plaintiff's "novice" ability at using a SmartBoard and felt that some aspects of Plaintiff's lesson were confusing for some students. He commented that although she was a "good fit for the ACCESS Classroom due to her patience and enthusiasm," he did not see "the same level of preparation and kinetic student participation [and] immersion in the learning" as in previous observations. *Id.* (3/9/2010).

On July 12, 2010, Superintendent Michael Chirco ("Supt. Chirco") and Prin. Cole recommended to the Board of Education that Plaintiff be granted tenure during an Executive Session of the School Board. The Board was presented with a Tenure Review Packet, which identified Plaintiff's credentials, positive attributes, and areas of concern as noted in her performance evaluations. The Packet indicated some "reservations" about Plaintiff's abilities to teach in another environment. Chirco Aff., Ex. A. [6]

Upon review, the Board voiced its concerns about the comments made by Prin. Cole relating to Plaintiff's disputes with a parent and her teaching assistants. Def. Stmt. ¶ 11. Board members also inquired about Plaintiff's ability to teach more complicated materials and/or teach in a different environment. *Id.* One Board member, Mary Evans, abstained from voting on Plaintiff's tenure due to her personal knowledge of the incidents described by Prin. Cole and her

---

[6] References to "Chirco Aff." refer to ECF No. 18-3, Affidavit of Supt. Chirco in support of Defendants' Motion for Summary Judgment.

"feelings" about Plaintiff. Evans Aff. ¶ 11.[7] Board member affidavits indicate that, despite

some positive items in the Tenure Review Packet, Plaintiff's overall recommendation was not as

strong as others in light of Plaintiff's past friction with a parent and teaching assistants, as well as

issues with planning lessons effectively and her flexibility as a teacher. Bd. Mem. Affs. ¶¶ 12-

16.[8] The consensus was that Plaintiff was not ready for tenure at that time, but no vote was taken

at the July 12, 2010 Board meeting. *Id.*, ¶¶ 17-20.

Approximately two weeks later, Supt. Chirco notified the Board that he would propose

that it terminate Plaintiff's probationary period in September 2010, rather than recommend her

for tenure. Had Plaintiff's tenure recommendation been denied by the Board at that time, her

probationary period would have ended in January 2011, requiring a mid-year replacement. Supt.

Chirco believed that a mid-year replacement in Special Education would be detrimental to the

students in Plaintiff's class, and sought to avoid that scenario. Chirco Aff. ¶¶ 18-25; Def. Stmt.

¶¶ 13-15. Thus, despite proposing that he make the recommendation to terminate Plaintiff, Supt.

Chirco never actually made that recommendation to the Board. Chirco Aff. ¶ 28.

In the meantime, Supt. Chirco met with Plaintiff's union representative, Tom Barden:

> [Barden] requested that [the Board] consider offering [Plaintiff] a
> *Juul* agreement[9] extending her appointment because the notice that
> we would terminate her appointment would not come until the end
> of July, giving her no opportunity to look for another position for
> September. She realizes that she will not be offered tenure, even at
> the end of the *Juul* Agreement. In fairness, I am considering this
> request, but would extend her appointment only on the
> understanding that she will tender her resignation effective June
> 30, 2011.

---

[7]    References to "Evans Aff." refer to ECF No. 18-5, Affidavit of Board Member Mary Evans in
support of Defendants' Motion for Summary Judgment.
[8]    References to "Bd. Mem. Affs." refer to ECF No. 18-5, Affidavits of the eight voting members of
the Board of Education in support of Defendants' Motion for Summary Judgment.
[9]    A "*Juul* Agreement" is a contract between an educator and an appointing authority which extends
the educator's probationary period rather than terminate the educator at the end of his or her probationary
period for not completing her probationary period satisfactorily. *See Matter of Juul v. Board of Educ. of
Hempstead School Dist. No. 1*, 76 A.D.2d 837 (2d Dep't 1980).

Woodworth Aff., Ex. E (Board Update Notes 7/16/2010).[10]

These negotiations resulted in Plaintiff agreeing to resign from the District at the end of the 2010-2011 school year, which would provide her with additional time to secure employment for the following school year. On August 3, 2010, Plaintiff signed a resignation letter, and was then assigned to her regular class for the 2010-2011 school year.

Shortly after Plaintiff submitted her letter of resignation, she requested documents relating to her tenure review through the Freedom of Information Law ("FOIL"). On August 18, 2010, Plaintiff received the Board of Education notes from the July 23, 2010 meeting, in which Supt. Chirco wrote:

> I spent a great deal of time considering what to do about the special education teacher who will be up for tenure next year. We gave considerable thought to offering her a *Juul* Agreement to extend her appointment for a year and reassigning her to a position in the High School to get a better picture of her range of abilities. However, when we looked at the pool of candidates in special education, it was clear that *there are a number of fine young teachers available*.

Pl. Ex. D (emphasis added).[11] After reviewing the Board notes, Plaintiff informed Supt. Chirco on September 10, 2010, that she wished to rescind her resignation and have the Board vote on her tenure.

At the September 13, 2010 Board meeting, Supt. Chirco again recommended that Plaintiff be granted tenure. The Board considered the recommendation, and all eight of the participating members voted not to accept Supt. Chirco's recommendation, with Mary Evans again abstaining from the vote. The following day, Supt. Chirco sent a letter to Plaintiff

---

[10]     References to "Woodworth Aff." refer to ECF No. 18-2, Affidavit of Attorney Ryan Woodworth in support of Defendants' Motion for Summary Judgment.
[11]     This remark is the only age-related comment in the record. Plaintiff testified that neither Supt. Chirco nor Prin. Cole had ever made any verbal remarks or comments to her about her age. Mace Dep. at 76, 82.

indicating the results of the vote and stating that the vote was advisory, with a final decision to be made on her tenure on October 18, 2010.

On September 20, 2010, Plaintiff requested the reasons for the Board's decision as well as a hearing before the Board to discuss her tenure with them. The District responded to Plaintiff on September 24, identifying four reasons why the Board did not approve Supt. Chirco's recommendation for Plaintiff's tenure: "(1) inability to consistently plan effective lessons and activities results in confusion in the classroom; (2) ineffective in working with the teaching assistants; (3) inability to communicate effectively with colleagues and teaching assistants; and (4) inability to work effectively with parents, resulting in an alternative placement for a student." Pl. Ex. I. According to the Board members, they did not know of or consider Plaintiff's age in making the decision to disapprove Supt. Chirco's recommendation for tenure. Bd. Mem. Affs. ¶¶ 3-4.

On October 8, 2010, Plaintiff submitted to Supt. Chirco and the Board of Education a written response contesting the Board's reasons, citing observations by principals and her Special Education mentor. Additionally, she explained that her problematic interactions with teaching assistants were due to their unprofessional conduct in the classroom. She also addressed the conflict with the parent, and noted that it was not indicative of her relationship with parents overall. Finally, Plaintiff requested a Teacher Improvement Plan before the Board made its final vote on her tenure. Pl. Ex. J.

Plaintiff appeared with her union representative at the Board hearing on October 18, 2011. There, her union representative requested that the Board not make a final decision on Plaintiff's tenure until she had a chance to complete a Teacher Improvement Plan to address the issues identified by the Board. The Board approved Plaintiff's request and tabled its decision on her tenure status.

On November 17, 2010, Plaintiff entered into a Teacher Improvement Plan and *Juul* Agreement. The Agreement provided that Plaintiff would continue to provide services for an additional year, thereby extending her probationary period. At the conclusion of the fourth year, the Board would again consider her appointment to tenure. Chirco. Aff., Ex. G. The Agreement, which incorporated the Teacher Improvement Plan, identified the four problem areas that Plaintiff would be expected to improve upon and required regular evaluations of Plaintiff. *Id.*

Shortly after the execution of the *Juul* Agreement, Plaintiff went out on medical leave until January 2011. On January 13, 2011, Plaintiff was evaluated by Supt. Chirco and Prin. Cole under the terms of the *Juul* Agreement. Those evaluations included statements of Plaintiff's strengths and weaknesses, and would be the first in a series of observations to be conducted of Plaintiff so that the Board could vote on her tenure. The evaluations contained some positive comments, but both criticized Plaintiff's lack of preparation. Specifically, the administrators took issue with her not reading an entire book before presenting parts of it to her class, resulting in, among other things, Plaintiff mispronouncing words from the text. Supt. Chirco assessed the lesson as "unacceptable," and stated that he expected more. Pl. Ex. R. Plaintiff submitted a written response to the administrators' comments noting her disagreement, and pointing out that it was common practice to present an excerpt of a book, rather than an entire book, to a class. Pl. Ex. P.

On January 31, 2011, Plaintiff filed a complaint with the Equal Opportunity Employment Commission ("EEOC") for unlawful discrimination in violation of the ADEA. The EEOC found no evidence that Plaintiff was treated less favorably than similarly-situated individuals not in the protected age group, and that the District articulated legitimate, nondiscriminatory reasons for its action. The EEOC dismissed Plaintiff's complaint and issued a Right to Sue letter on August 21, 2011. ECF No. 18-2, Ex. D.

In April 2011, Plaintiff received her second set of evaluations by administrators Paul Lahue and Susan Wissick.[12] Both found positive and negative attributes to Plaintiff's teaching and noted them in the observation reports. Recommended areas for growth included more engaging use of teaching assistants, improving student engagement/excitement, and better utilization of time. Pl. Ex. V.

Thereafter, Plaintiff went on medical leave beginning April 26, 2011 and did not return to complete the Teacher Improvement Plan.

On October 3, 2011, Supt. Chirco proposed an extension of the probationary period until the end of the 2011-12 school year, to provide additional time for Plaintiff to complete the Teacher Improvement Plan and for the administration to complete its observations of Plaintiff's teaching.

The Board unanimously agreed to extend Plaintiff's probationary appointment until the end of the 2011-12 school year. Plaintiff, however, never returned to work and was not terminated from employment with the District.

## DISCUSSION

### I. Standard of Review

Defendants move to dismiss the Complaint for failure to state a claim, cite to Fed. R. Civ. P. 12(c) – which deals with judgment on the pleadings – or alternatively move for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 18. Since both parties have submitted affidavits and exhibits in support of their positions, making clear that both parties have treated this as a motion for summary judgment, the Court will consider those matters submitted outside the pleadings, and will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

---

[12]    Neither administrator had any role in the prior decisions regarding Plaintiff's tenure.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Regarding materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. More importantly, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250.

As the Second Circuit observed in *Duse v. Int'l Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001), "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." 252 F.3d 151, 158 (citing *e.g., Anderson*, 477 U.S. at 255). However, "[i]f the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and do not suffice to defeat a motion for summary judgment." *Duse*, 252 F.3d at 158 (citing *e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir. 1992); *Knight v. U.S. Fire Ins.*

*Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986) (the existence of a factual issue will not suffice to defeat a motion for summary judgment where that issue is not material to the ground of the motion).

II.    *McDonnell Douglas* Framework

"In both ADEA and NYHRL discrimination cases where, as here, there is no direct evidence of discriminatory conduct, the three-part burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973) is applied to determine whether summary judgment is appropriate." *Randall v. Kaleida Health*, No. 08-CV-925S, 2012 WL 400780, at *4 (W.D.N.Y. Feb. 7, 2012). First, a plaintiff must establish a *prima facie* case of age discrimination by showing: (1) plaintiff was at least 40 years of age at the relevant time; (2) plaintiff's job performance was satisfactory; (3) plaintiff suffered an adverse employment action such as termination; and (4) the circumstances of that adverse employment action give rise to an inference of age discrimination. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir. 1997); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (describing a plaintiff's initial burden as minimal).

Once the *prima facie* case is established, the burden shifts to the defendant to give a "legitimate, nondiscriminatory" reason for the conduct. *Ben–Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 19–20 (2d Cir. 2013) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). This burden is light, and the employer "must simply articulate an explanation that, if true, would connote lawful behavior." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 176 (E.D.N.Y. 2011) (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998)). If the defendant offers such a reason, the presumption of discrimination resulting from the *prima facie* case is eliminated and the burden shifts back to the plaintiff to provide evidence that the defendant's legitimate, nondiscriminatory reason is "a mere pretext" for discrimination. *Ben–Levy*, 518 F. App'x at 19–20. To prevail on a claim of discrimination under the ADEA, a

plaintiff must show that "but for" her age the adverse employment action would not have been taken. *Id.* at 19, n.1.

## III. State Law Claim (Count II)

As an initial matter, Plaintiff has agreed to withdraw her claim under NYHRL, as it is duplicative of her ADEA claim. Pl. Mem. (ECF No. 26) at 20. Accordingly, Plaintiff's Second Cause of Action of the Amended Complaint is dismissed on this motion. *See* Am. Compl. ¶¶ 59-65.

## IV. ADEA Discrimination Claim (Count I)

### A. *Prima Facie* Case

With regard to Plaintiff's *prima facie* case, it is undisputed that she was over 40 years-old at the time of the alleged adverse employment action. Defendants do not challenge Plaintiff's *prima facie* case on the basis of her qualification, and she has therefore established that prong as well. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (qualification element which is necessary for employee alleging ADEA claim to shift the burden to employer for an explanation of the adverse job action is minimal; employee must show only that she possesses the basic skills necessary for performance of the job.)

Defendants contest that Plaintiff suffered an adverse employment action, arguing that the Superintendent only "attempted" to terminate Plaintiff, the Board never made a final determination regarding Plaintiff's tenure, and to date, Plaintiff has remained employed by the District. Def. Mem. (ECF No. 18-6) at 2-7. Plaintiff, on the other hand, asserts that the Board members' advisory vote against the Superintendent's recommendation constitutes an adverse employment action for purposes of her *prima facie* case. Pl. Mem. at 13.

An adverse employment action is "a materially adverse change in the terms and conditions of employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).

Defendants cite to case law from within this Circuit holding that a recommendation to terminate a plaintiff's employment does not constitute an adverse employment action. *See Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 233-34 (E.D.N.Y. 2012) ("Threats of termination do not, by themselves, constitute an adverse employment action as a matter of law"); *see also Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320–21 (S.D.N.Y. 2002) ("Courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results."); *but see Nagle v. Marron*, 663 F.3d 100, 106 (2d Cir. 2011) (noting, in *dicta*, that a decision to recommend termination and not to recommend tenure was an adverse employment action where defendants conceded that the plaintiff had suffered an adverse employment action).

In *Weisbecker*, upon which Defendants principally rely, the district court found that a Superintendent's recommendation that the plaintiff be terminated as a probationary teacher was not an adverse employment action where: (1) the Superintendent was not the final decision maker, but only recommended termination; (2) the plaintiff was notified of the recommendation of termination prior to the Board's meeting, and (3) the plaintiff was afforded extensive process under New York Education Law § 3031 to request the reasons for the recommendation and provide a responsive statement to the Board. *Weisbecker*, 890 F. Supp. 2d at 234. The plaintiff in *Weisbecker* voluntarily resigned before the threatened termination took effect and declined to invoke her due process rights under Education Law § 3031 to contest the recommendation. The

record in that case also did not support her argument that her termination was a "foregone conclusion." *Id.* at 234, n.19.

In the present matter, Supt. Chirco did not simply threaten to end Plaintiff's employment. He made an initial recommendation to the Board to *approve* Plaintiff for tenure, and after discussing the matter with the Board, changed his recommendation to terminating Plaintiff's probationary employment. By letter, he advised both Plaintiff and the Board of his proposed recommendation, which never went before the Board. Chirco Aff. ¶¶ 8, 25, 72. The Superintendent changed course again after speaking with Plaintiff's union representative, next proposing that Plaintiff resign in lieu of termination, which Plaintiff initially did – but later rescinded. *Id.*, ¶¶ 28-30, 36. Following Plaintiff's rescission of resignation, Supt. Chirco again recommended Plaintiff for tenure (this time at her own request), which the Board unanimously denied in an advisory vote. *Id.*, ¶ 37. Upon invoking her right to an explanation and a hearing as to the Board's vote, she was offered an extension of her probationary period subject to a Teacher Improvement Plan. In the meantime, the Board "tabled" its final decision on Plaintiff's tenure recommendation and Plaintiff returned to work for an additional year in probationary status. *Id.*, ¶¶ 38, 40-43, 48-51. The record also indicates that Plaintiff's denial of tenure, upon the initial advisory vote or following the completion of the *Juul* Agreement, was inevitable. *See, e.g.*, Woodworth Aff., Ex. E. As such, *Weisbecker* is distinguishable from the facts of this case.

Defendants make much of the fact that a final vote by the Board was "tabled," and therefore no material change to the terms and conditions of Plaintiff's employment ultimately took place. Def. Mem. at 4. Their argument overlooks the fact that the Board voted against tenure, which resulted in Plaintiff's placement on a Teacher Improvement Plan and *Juul* Agreement, which in turn extended her probationary term for an additional year. The Second

Circuit has recently held, in the context of a racial discrimination claim, that such circumstances amount to an adverse employment action for purposes of a *prima facie* case:

> Extending an employment relationship by one year by itself may not qualify as an adverse employment action. But when coupled with the denial of tenure, it is assuredly an adverse employment action. During the fourth year of probationary employment, a teacher can be fired at any time for any lawful reason. N.Y. Educ. Law § 2573(1)(a). But if granted tenure, the teacher may be fired only for cause. *Id.* §§ 2573(5)(a), 3020–a. The denial of tenure after three years, when a teacher was otherwise eligible for tenure, does not become any less an adverse action because the teacher is provided with another year of probationary employment.

*Tolbert v. Smith*, 790 F.3d 427, 436 (2d Cir. 2015).

Here, Plaintiff was denied tenure by an advisory vote of the Board. Though the extension of the probationary period adjourned the Board's final vote, and Plaintiff remained in the same probationary status, the Second Circuit has made clear that the denial of tenure is a denial of "a material improvement in the conditions of a plaintiff's employment." *Tolbert*, 790 F.3d at 436. Accordingly, Plaintiff has established that she suffered an adverse employment action.

Defendants next contend that Plaintiff's *prima facie* case fails on the basis that Supt. Chirco's memoramdum to the Board regarding "fine young teachers" was a stray remark, insufficient to establish an inference of discriminatory intent. Def. Mem. at 13-16.

The "stray remark" doctrine acknowledges that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). In determining whether a comment is a non-probative "stray remark," courts should consider the following factors:

> (1) who made the remark, i.e., a decision maker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark,

i.e., whether a reasonable juror could view the remark as
discriminatory; and (4) the context in which the remark was made,
i.e., whether it was related to the decision making process.

*Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004).

In this case, the comment about young teachers was made by the Superintendent, who
was the Plaintiff's supervisor and the key decision-maker with respect to her performance
evaluations and whether she would be recommended to the Board for a tenured position. It was
directly related to the employment decision at issue, namely, whether Plaintiff should be granted
tenure, and also directly related to the decision-making process as it was communicated to the
Board of Education. A reasonable jury could view the phrase "there are a number of fine young
teachers available," in the context of an applicant pool, as discriminatory. *See Schreiber*, 324 F.
Supp. 2d at 519. ("[W]hen remarks are made by decision makers in connection with a decision .
. .to promote 'young blood,' a reasonable juror could find the remark to be discriminatory.")
Accordingly, the stray remark doctrine does not apply under these facts.

Defendants also urge the Court to find that the "same actor" inference defense supports
their motion for summary judgment. Def. Mem. at 13, 16-17.

Employment discrimination case law recognizes that when the same employer hires a
person within the protected class, and then fires that same person within a relatively short time, a
"strong inference" arises that discrimination was not a motivating factor in the employment
decision. *Kazukiewicz v. Kaleida Health*, No. 08-CV-341-JTC, 2010 WL 2998671, at *5
(W.D.N.Y. July 26, 2010) (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir.
2000)). In *Kazukiewicz*, Judge Curtin found that the same actor who was responsible for hiring
the plaintiff also discharged him three and a half months later, giving rise to a strong inference of
nondiscriminatory motivation, and that "[t]o avoid summary judgment at the *prima facie* stage,
plaintiff must come forward with at least some showing of proof to support 'the strong case of

bias necessary to overcome this inference.'" *Id.* (quoting *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1098 (9th Cir. 2005)).

Simply put, the same actor inference does not apply here. The inference arises from the rationale that "when the person who made the [adverse decision] was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 560 (2d Cir. 1997). There is no evidence on this record that the individual seeking to deny Plaintiff tenure was the same person that hired her, and the adverse tenure decision occurred approximately three years after Plaintiff was initially hired at the District. *See* Mace Dep. at 23-24.

On these facts, I find that the Plaintiff has established her *prima facie* case.

### B.    Reason for the Board's Decision

Next, the Defendants advance a legitimate, nondiscriminatory reason for their actions: job performance.

The Board opposed Supt. Chirco's tenure recommendation in an 8-0 advisory vote based on concerns regarding Plaintiff's communication skills with parents, students, and teaching assistants, as well as her planning and classroom abilities. Bd. Mem. Affs., Ex. B. There is no dispute that Plaintiff was aware of these issues, as she acknowledged copies of the evaluations containing the relevant comments. Performance concerns have long been held to be a legitimate, nondiscriminatory reason to deny tenure. *See Whitting v. Locust Valley Cent. School Dist.*, No. 10-CV-0742, 2012 WL 5289617, at *13 (E.D.N.Y. Oct. 22, 2012); *see also Woodard v. Monticello Cent. Sch. Dist.*, No. 06 Civ. 13361, 2008 WL 5062125, at *9 (S.D.N.Y. Dec. 1, 2008) (finding a teacher's poor performance evaluations to be a nondiscriminatory justification for terminating the plaintiff); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (holding that "an

honest belief" that an employee's job performance "[does] not measure up to that required" is a legitimate, nondiscriminatory reason to discharge an employee).

As the Defendants have articulated a nondiscriminatory reason, the burden shifts back to Plaintiff, who must establish that the Defendants' proffered reason was a mere pretext for discrimination. To do so, she "must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons presented by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 F. App'x 462, 465 (2d Cir. 2011) (internal quotation marks omitted). In addition, in an age discrimination case, the plaintiff must demonstrate that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers only consideration, but rather that the adverse employment action [ ] would not have occurred without it." *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011) (citing *Gross*, 557 U.S. at 175–77).

Plaintiff argues that the Board's four purported reasons as to why they voted to deny Plaintiff tenure were pretextual because they were contradicted by her prior positive teaching evaluations during the probationary period from 2008 to 2010. Pl. Mem. at 16; Pl. Exs. A, I.

A careful review of the record reflects that over the course of three years, Plaintiff consistently received criticism regarding her teaching abilities in the areas of preparation and flexibility. Pl. Exs. A, I. She does not dispute that the criticisms were truthful and accurate, *see* Mace Dep. at 90-100, but characterizes the evaluations as "above average" and "positive" overall. Pl. Mem. at 13, 16. Also noted in the Board's list of reasons for denying Plaintiff tenure were the incidents involving Plaintiff, her teaching assistants, and a parent. Again, Plaintiff does

not deny the conflicts, which resulted in one teaching assistant being re-assigned and a student being removed from her class. Mace Dep. at 53-56, 90-100. Rather, she maintains that the events were isolated and that a Teacher Improvement Plan would help in addressing those problems prior to a Board vote on tenure. Chirco Aff. ¶ 46.

Where an employer's proffered reason is that the employee's job performance was unsatisfactory, the employee's opinion to the contrary, by itself, is insufficient to raise a triable issue of fact as to pretext. *See Shabat v. Billotti*, 108 F.3d 1370, 1997 WL 138836, at *2 (2d Cir. Mar. 18, 1997) (unpublished) ("[T]he fact that an employee disagrees with an employer's evaluation of him does not prove pretext."). This principle applies even where the Plaintiff previously received favorable performance reviews. *See Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 315–16 (W.D.N.Y. 1999) ("[P]rior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual. To hold otherwise would be to hold that things never change, a proposition clearly without a basis in reality.") (citation and internal quotation marks omitted). Plaintiff's first six evaluations revealed, in addition to many positive remarks about her teaching, that her weaknesses were repeatedly highlighted throughout the course of three years. The final observation, which occurred well before Plaintiff's tenure review, indicated that her performance had in fact diminished. Thus, Plaintiff has not established pretext by showing that the Defendants' reasons for recommending termination and/or the denial of tenure is "unworthy of credence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

Even favorably viewing Supt. Chirco's sole age-related comment as reflective of discriminatory animus, no reasonable fact-finder could conclude, on the basis of the entire record, that Defendants' explanation for denying Plaintiff's tenure was a pretext for age discrimination. *See Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (in affirming

district court's decision granting defense motion for summary judgment in ADEA case, court concludes that even though age-related comment to plaintiff by CEO of defendant company, six weeks before plaintiff's termination, could "bear some weight in demonstrating discriminatory bias[,]" it nevertheless was insufficient to permit reasonable jury to conclude that "'but for' defendants' age bias, [plaintiff] would not have been terminated[,]" considering "overwhelming documentary evidence" supporting defendants' nondiscriminatory explanation); *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20 (2d Cir. 2011) (affirming summary judgment; facially age-based comment, by plaintiff's supervisor, even "if made in relation to the employment decision at issue as well as the decision-making process[,] ... was insufficient to allow [plaintiff] to carry her burden in showing that age-discrimination was the 'but-for' cause of defendant's decisions regarding [plaintiff's] salary and bonus"). Significantly, it was Supt. Chirco who made the recommendation in favor of Plaintiff's tenure in the first instance.

In light of the requirement that Plaintiff must show that age discrimination was the "but-for" cause of her termination, Plaintiff's ADEA claim cannot survive summary judgment. The record evinces that when Plaintiff was denied tenure, it did not occur to her to attribute the adverse employment action to age discrimination. Indeed, it was only after she requested and received the FOIL documents from the Board of Education that she discovered Supt. Chirco's remark about "fine young teachers." Mace Dep. at 79-80, 82-83, 124. There is no evidence that Plaintiff was replaced by a younger individual. Plaintiff testified that her position was not posted, did not know "for sure" whether any posted positions were for special education or were in the high school or middle school. *Id.* at 87-88. Finally, the Defendants' position on Plaintiff's areas of needed improvement remained the same from her first performance evaluation through the preparation of the Tenure Review Packet and, ultimately, the Board's vote on her tenure. *See Heaphy v. Webster Central School Dist.*, 761 F. Supp. 2d 89, 93 (W.D.N.Y. 2011) ("Although

[Plaintiff] did receive some negative performance evaluations . . .and was placed on a performance improvement plan . . .those actions – which were tempered by at least one positive evaluation – do not reflect a sea change in the District's assessment of plaintiff's performance."); *cf. Digilov v. JPMorgan Chase Bank, N.A.*, No. 13 Civ. 975, 2015 WL 685178 (S.D.N.Y. Feb. 18, 2015) (material issue of fact existed as to pretext where plaintiff submitted evidence in the form of a comparison of his age to the ages of others promoted, a single age-related comment by his manager, and defendant's inconsistent justifications for the denial of his promotion).

In sum, Plaintiff has produced no evidence from which a jury could rationally find that Defendants discriminated against her on the basis of her age. The Court therefore grants Defendants' Motion for Summary Judgment in its entirety.


CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 18) is GRANTED, and this case is dismissed with prejudice. The Clerk of Court is directed to close this case.


IT IS SO ORDERED.

DATED:     September 25, 2015
           Rochester, New York


HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court